IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 07-161 |
| | : | |
| v. | : | |
| | : | |
| MICHAEL CURTI | : | CIVIL ACTION NO. 10-5627 |

## MEMORANDUM

**Padova, J.**                                                          **August 3, 2011**

      Curti has filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence.  He

asks that we vacate his sentence on the ground that his attorney was ineffective in connection with his

sentencing.  The Government has filed a Motion to Dismiss Curti's § 2255 Motion on the ground that

he waived his right to appeal or collaterally attack his judgment of conviction and sentence.  For the

following reasons, the Government's Motion to Dismiss is granted and Curti's Section 2255 Motion

is dismissed.

## I.      BACKGROUND

      A.      <u>Guilty Plea</u>

      On April 18, 2007, before the Honorable Thomas N. O'Neill, Jr., Curti waived indictment and

pled guilty to Information No. 07-161, which charged him with one Count of possession of child

pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  During the April 18, 2007 Hearing, Curti

admitted the truth of the following facts regarding his offense.  Between January 10 and January 20,

2006, investigators with the United States Attorney's Office for the District of New Jersey and agents

of United States Immigration and Customs Enforcement ("ICE") intercepted e-mails between Curti

and a website called "Illegal CP."   (4/18/07 Hr'g Tr. at 19.)  Illegal CP contains graphic images of

children engaged in sexual acts with adults and with other children.  (<u>Id.</u>)  The intercepted e-mails all

confirmed that Curti had been granted access to Illegal CP.  (Id.)  Further investigation by ICE agents

revealed that Curti's e-mail address had accessed numerous images of child pornography from the

Illegal CP website and that Illegal CP had billed his JP Morgan Chase credit card $79.99 on January

13, 2006.  (Id. at 20.)  A subsequent forensic examination of Curti's computer revealed over 7,000

images of child pornography.[1]  (Id.)

As part of Curti's Guilty Plea Agreement with the Government, he agreed and stipulated to the

following facts to be used in the calculation of his United States Sentencing Guidelines range: (1) that

he "possessed more than 600 images, [and] therefore his Guideline range should be calculated based

on this pursuant to USSG § 2G2.2(b)(7)(A)[;]"[2] (2) that his "possession of child pornography involved

the use of a computer making [his] offense level increase by 2 levels under USSG § 2G2.2(b)(6)[;]"

(3) that his computer contained "images depicting material involving the sexual exploitation of . . .

prepubescent minors who had not attained the age of twelve (i.e. toddlers), making the defendant's

---

[1]The Presentence Investigation Report ("PSI") prepared by the probation officer in this case states that, in addition to these images of child pornography, Curti's computer also contained sexually suggestive and inappropriate pictures of his nine-year-old granddaughter, including pictures of her unclothed that were taken in a bathroom in his residence.  (PSI ¶ 12, Foley Rpt. at 3.)  Curti's computer also contained pictures of minor girls taken at his community swimming pool and pictures he took of young girls in the neighborhood as they passed by his home on their way to and from school.  (PSI ¶ 13, Foley Rpt. at 3-4.)  Curti's pictures were organized on his computer and he used an encryption program to conceal the images.  (PSI ¶ 14.)  His picture collection included 16 known victim groups.  (Id. ¶ 15.)  Curti did not object to paragraphs 12-15 of the PSI.  (11/7/07 Hr'g  Tr. at 5.)  Curti also admitted to Timothy P. Foley, Ph.D, who conducted a psycho-sexual evaluation of Curti at the request of his probation officer, that he had taken the pictures of his granddaughter and of neighborhood girls.  (Foley Rpt. at 3-4.)

[2]The reference to § 2G2.2(b)(7)(A) in this paragraph is clearly a typographical error, as § 2G2.2(b)(7)(A) applies to an offense involving "at least 10 images, but fewer than 150" and Curti agreed that he "possessed more than 600 images[,]"  Guilty Plea Agreement ¶ 6(a), making § 2G2.2(b)(7)(D) applicable in this case.  See  U.S.S.G. § 2G2.2(b)(7)(D) (providing that a defendant's offense level should be increased by 5 levels if the offense involves 600 or more images).

offense level increase by 2 levels under USSG § 2G2.2(b)(2)[;]" and (4) that the images on his computer "portrayed sadistic, masochistic and other depictions of violence, making the defendant's offense level increase by 4 levels under USSG § 2G2.2(b)(4)." (Guilty Plea Agreement ¶¶ 6(a), (b), (c), (d).)  He also "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] conviction, or any other matter relating to [his] prosecution . . . ." (Guilty Plea Agreement ¶ 7.)

B.     Sentencing

We sentenced Curti on November 7, 2007.  Prior to sentencing, the probation officer calculated that Curti had a Total Offense Level of 28 and a Criminal History Category of I.  (Presentence Investigation Report ("PSI") ¶¶ 23, 35, 38.)  The calculation of Curti's Total Offense Level proceeded from a Base Offense Level of 18, pursuant to U.S.S.G. § 2G2.2.  (PSI ¶ 24.)  The Base Offense Level was increased by two levels because the pornographic images involved a prepubescent minor pursuant to U.S.S.G. § 2B2.2(b)(2); by four levels because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence pursuant to U.S.S.G. § 2G2.2(b)(4); by two levels because the offense involved a computer pursuant to U.S.S.G. § 2G2.2(b)(6); and by an additional five levels because the offense involved 600 or more images pursuant to U.S.S.G. § 2G2.2(b)(7)(D).  (PSI ¶¶ 25-28.)  The resulting Adjusted Offense Level of 31 was reduced by three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), resulting in Curti's Total Offense Level of 28.  (PSI ¶¶32-35.)  The Sentencing Range provided by the United States Sentencing Guidelines for a Total Offense Level of 28 and Criminal History Category of I is 78 to 97 months.   U.S.S.G. Ch. 5, pt. A.

In preparation for Curti's sentencing, his attorney submitted a sentencing memorandum in which he detailed Curti's medical issues, which include prostate cancer, arterial fibrillation, and

3

Deplasti Nevi.  He also submitted the reports of two psychologists, Steven E. Samuel, Ph.D., Curti's

treating psychologist, and Timothy P. Foley, Ph.D, who conducted a psycho-sexual evaluation of Curti

at the request of the probation officer.  Curti's attorney also asked the Court to grant Curti a variance

from the Sentencing Range provided by the Sentencing Guidelines based on Curti's cooperation with

law enforcement (in addition to admitting his conduct, Curti provided the Government with the codes

for an encryption program he used to conceal the pornographic images on his computer); his voluntary

treatment with Dr. Samuels; and his voluntary enrollment in the Sexual Trauma and Recovery

("STAR") program, a treatment program for non-violent sex offenders.  Curti's attorney also submitted

letters written on Curti's behalf by Curti; Curti's sister, step-son, and wife; and by other relatives,

friends, and business colleagues.

       At sentencing, Curti's attorney called Dr. Samuel as a witness.  Dr. Samuel testified regarding

Curti's diagnosis, treatment, remorse, and participation in the STAR program, and his low risk for

sexual contact offenses.  (11/7/07 Hr'g Tr. at 8-15.)  Curti's attorney also filled the courtroom with

Curti's family members, friends, and professional colleagues.  (Id. at 28-29.)  Curti's attorney argued

that Curti was entitled to a downward variance from the Guidelines Sentencing Range based on his

substantial cooperation with the Government about his own criminal actions, his provision of the

encryption codes to the Government,[3] his post-offense rehabilitation (including his voluntary

participation in private psychotherapy and his participation in the STAR program); and his age and

health problems.  (Id. at 28-36.)  Curti also made a statement at sentencing, during which he expressed

---

[3]Curti's attorney contended at sentencing that the Government would not have been able to
access the vast majority of the images found on his computer without his encryption code and,
consequently, that his provision of those codes to the Government constituted substantial cooperation.
(11/7/07 Hr'g Tr. at 31-32.)

4

his deep remorse for his conduct and apologized to his family and to the victims.  (Id. at 36-37.)

We rejected Curti's request for a variance from the advisory Guidelines Sentencing Range. (Id. at 51-52.)  We found, based on the grievous nature and circumstances of Curti's misconduct in this case, that Curti's cooperation, post-offense rehabilitation, medical issues, and age did not warrant a sentence below the advisory Sentencing Guidelines range.  (Id. at 51-55.)  We sentenced Curti to 78 months imprisonment (the bottom of the Guidelines Sentencing Range for his Total Offense Level and Criminal History), three years of supervised release, a fine of $12,500, and a special assessment of $100. (Id. at 55-58.)

       C.      Post-Sentencing Procedural History

Even though Curti waived his rights to appeal and to collaterally attack his sentence in his plea agreement, he filed several attacks on his sentence, the first less than a week after sentencing.  On November 13, 2007, Curti filed a Motion to Correct Sentence for Clear Error pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure.  In his Rule 35 Motion, Curti argued that the Court erred by sentencing him to 78 months of imprisonment.  Specifically, Curti averred that the advisory Sentencing Guidelines Sentencing Range was improperly based on a Total Offense Level of 28, which would only be appropriate if the offense involved 600 or more images pursuant to U.S.S.G. § 2G2.2(b)(7)(D) and, in fact, the Government had found fewer than 150 images, which should have resulted in a Total Offense Level of 26 pursuant to U.S.S.G. § 2G2.2(b)(7)(B).  Curti's argument clearly ignored both his admission that his offense involved more than 7,000 images of child pornography (4/18/07 Hr'g Tr. 20), and his stipulation in his Guilty Plea Agreement that "he possessed more than 600 images, therefore his Guideline range should be calculated based on this . . . ."  (Guilty Plea Agreement ¶ 6(a).)  We denied Curti's Rule 35 Motion because he was "not asking us to correct

an obvious error or mistake, but to reopen an issue previously decided at sentencing and to reconsider [his] request for a variance from the application [of] U.S.S.G. § 2G2.2(b)(7)(D) in the calculation of his Total Offense Level," which was beyond our authority pursuant to Rule 35(a).  (1/7/08 Order at 2.)

On February 6, 2008, Curti filed a pro se appeal of our Order denying his Rule 35 Motion.  On January 27, 2009, the United States Court of Appeals for the Third Circuit dismissed the appeal as untimely to the extent it sought review of his judgment of conviction and sentence and remanded to this Court "to consider whether Appellant's notice of appeal should be treated as a motion to vacate his sentence under 28 U.S.C. § 2255."  United States v. Curti, No. 08-1425, order (3d Cir. Jan. 27, 2009).

On November 6, 2008, Curti, assisted by new counsel, filed a Motion for Nunc Pro Tunc Sentencing on the ground that his prior attorney had failed to file a timely notice of appeal on his behalf and Curti wanted his appellate rights to be restored.  A Hearing was held on that Motion on December 17, 2008, and we informed Curti that a Section 2255 Motion was the appropriate avenue for challenging his sentence on this basis.  We continued the Hearing for 60 days so that Curti could file a Section 2255 Motion.  (12/17/2008 Order.)

On February 13, 2009, Curti filed a Section 2255 Motion, seeking to have his sentence vacated on the grounds of ineffective assistance of counsel, stating that his prior counsel did not file a timely notice of appeal despite his request and that he was improperly advised of his appellate rights.  Curti also argued that his prior counsel was ineffective in connection with his sentencing in that he failed to object to inaccuracies and misstatements in the PSI; failed to present relevant evidence of mitigation and remorse; and failed to present his character witnesses during the sentencing hearing.  We held a

Hearing on Curti's Section 2255 Motion on April 28, 2009, and granted the Motion only insofar as it sought to vacate his sentence on the ground that his prior attorney failed to file a timely notice of appeal.  We agreed to hold a resentencing hearing, in order to restore Curti's appellate rights, and dismissed Curti's remaining claims of ineffective assistance of counsel without prejudice so that his "other ineffective assistance claims, if still viable, [could] be raised in a future § 2255 petition" brought after he completed direct appeal of his conviction.  See Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001).

On June 12, 2009, we held Curti's resentencing hearing.  Curti sought a de novo sentencing and attempted to make additional arguments that his disclosure of his encryption password to the Government demonstrated extraordinary contrition and provided substantial assistance to the Government warranting a downward variance. He also asked that we consider his medical problems. We rejected Curti's request that we conduct a de novo sentencing and, instead, simply reimposed his original sentence in order to restore his appellate rights.  See United States v. Shedrick, 493 F.3d 292, 303 (3d Cir. 2007) (noting that "the usual course in cases of this nature:  [is to] vacate and remand for re-entry of the initial sentence so that there can be a timely appeal."  (listing cases)).

Curti filed his Notice of Appeal on June 16, 2009.  The Government moved to dismiss Curti's appeal based on the appellate waiver in his Guilty Plea Agreement.  On October 29, 2009, the Third Circuit granted the Government's Motion and dismissed the appeal.  United States v. Curti, No. 08-1425, order (3d Cir. Oct. 29, 2009).

Curti filed the instant Section 2255 Motion on November 18, 2010.[4]  Curti bases his Motion on the ineffective assistance of his counsel at his first sentencing.  He claims that his prior counsel:

---

[4]He attempted to file the Motion on October 21, 2010, but failed to use the required form.

> (1) [f]ailed to object to inaccuracies and mistatements [sic] in the
> presentence report; (2) failed to present relevant evidence of mitigation
> and remorse to the Court at sentencing; (3) failed to present the
> testimony of the defendant's character witnesses who were present at
> sentencing; (4) failed to argue present evidence regarding the
> unreasonableness of the sentencing guidelines calculation and why the
> advisory range exceeded a sentence that would be sufficient but not
> greater than necessary to comply with the purposes of sentencing.

(Mot. ¶ 12.)  The Government filed its Motion to Dismiss the instant Section 2255 Motion on March

30, 2011.  Curti did not file a brief in support of his Section 2255 Motion or a response to the Motion

to Dismiss.

## II.    DISCUSSION

The Government argues that Curti's Section 2255 Motion should be dismissed because he

waived his right to appeal or collaterally challenge his sentence in his Guilty Plea Agreement.  The

United States Court of Appeals for the Third Circuit has held that a waiver of appellate or collateral

attack rights is enforceable provided that (1) it was entered into knowingly and voluntarily; (2) no

specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not

work a miscarriage of justice.  United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citing

United States v. Jackson, 523 F.3d 234, 243-44 (3d Cir. 2008)); see also United States v. Khattak, 273

F.3d 557, 562-63 (3d Cir. 2001); Shedrick, 493 F.3d at 297-98.

### A.    Knowing and Voluntary Waiver

We first "consider whether there is record evidence that [Curti] knowingly and voluntarily

signed the waiver."  United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007).  In making this

determination, we examine both the language of the waiver and the plea colloquy.  See United States

v. Mabry, 536 F.3d 231, 238 (3d Cir. 2008) (citing Gwinnett, 483 F.3d at 203-04).  The language of

Curti's Guilty Plea Agreement clearly provides that, with only limited exceptions, he waived his right

8

to attack his conviction and sentence pursuant to 28 U.S.C. § 2255.  Paragraph 7 of the Agreement

provides that Curti "voluntarily and expressly waives all rights to appeal or collaterally attack [his]

conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal

or collateral attack arises under 18 U.S.C. § 3742, 18 U.S.C. § 1291, 28 U.S.C. § 2255, or any other

provision of law."  (Guilty Plea Agreement ¶ 7.)  Moreover, Curti signed both the Guilty Plea

Agreement and an Acknowledgment of Rights, acknowledging that he had fully discussed the Guilty

Plea Agreement with his attorney and that he understood that he was waiving his right to appeal or

collaterally attack his conviction or sentence, except as set forth in the waiver provision.  (Id. ¶ 8;

Acknowledgment of Rights ¶ 6.)

     Prior to accepting Curti's guilty plea, Judge O'Neill conducted a plea colloquy pursuant to

Federal Rule of Criminal Procedure 11, which provides, in pertinent part, as follows:

> (b)(1)  Before the court accepts a plea of guilty or nolo contendere, the
> defendant may be placed under oath, and the court must
> address the defendant personally in open court.  During this
> address, the court must inform the defendant of, and determine
> that the defendant understands . . .
>
> *     *     *
>
> (N)     the terms of any plea-agreement provision waiving the
> right to appeal or to collaterally attack the sentence.

Fed. R. Crim. P. 11(b)(1); see also Gwinnett, 483 F.3d at 204.  During the plea colloquy, Judge

O'Neill confirmed that Curti had read the Guilty Plea Agreement and discussed it completely with his

attorney.  (4/18/07 Hr'g Tr. at 7.)  Judge O'Neill asked Curti whether he had made the decision to

plead guilty voluntarily and of his own free will; Curti answered that he had.  (Id. at 11.)  Judge

O'Neill also asked Curti whether the Guilty Plea Agreement was his only agreement with the

Government concerning this matter and Curti responded that it was.  (Id.)  Judge O'Neill also

9

conducted the following colloquy with Defendant with respect to the waiver:

> THE COURT: Now, you ordinarily would have the right to bring in later proceedings such as a collateral attack with a habeas corpus motion to vacate, set aside or correct your sentence, and the plea agreement fairly limits your right to appeal and prevents you from using later proceedings like a collateral attack and a habeas corpus to challenge your conviction, sentence or any other matter, do you understand that?
>
> THE DEFENDANT: I have to get an explanation . . . .   Yes, I understand, Your Honor.

(Id. at 15.) Following the colloquy, Judge O'Neill found that Curti was competent to plea; that his plea was knowing and voluntary and not the result of force, threats, or promises apart from the Guilty Plea Agreement; that the plea was supported by an independent basis of fact; and that Curti understood the charges against him, his legal rights, the maximum possible penalty he faced and that he was giving up his right to a trial.  (Id. at 23.)

In sum, the Guilty Plea Agreement, the Acknowledgment of Rights, and Judge O'Neill's colloquy with Curti demonstrate that Curti was fully informed of his rights, the Government's obligations, and the nature of the appellate and collateral attack waiver.  Furthermore, Curti indicated by both his execution of the Guilty Plea Agreement and his sworn responses to Judge O'Neill's questions, that he had consulted with his attorney and understood the waiver.  Therefore, we find that Curti knowingly and voluntarily entered into the appellate and collateral attack waiver contained in the Guilty Plea Agreement.

B.     Specific Exceptions

We next consider whether any specific exception set forth in Curti's waiver provision applies. The waiver provision in Curti's Guilty Plea Agreement contains the following exceptions:

> This waiver is not intended to bar the assertion of constitutional claims

that the relevant case law holds cannot be waived.

    a.      Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of her sentence.

    b.      If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claim that:

        (1)      the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 4 above;

        (2)      the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;

        (3)      the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 543 U.S. 220 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

    If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

(Guilty Plea Agreement ¶ 7.)  Curti does not argue that any of these exceptions applies here, and we can perceive no basis for such an argument.  Curti does not assert any non-waiveable constitutional claim, the Government has not appealed, and the instant Motion is not a direct appeal.  Moreover, we did not sentence Curti in excess of the statutory maximum, depart upward pursuant to the Sentencing Guidelines, or impose a sentence above the final Sentencing Guideline range.  Accordingly, we conclude that no specific exception contained in the waiver provision applies in this case.

    C.      Miscarriage of Justice

    Finally, we consider whether enforcement of the waiver would result in a miscarriage of

justice.  The circumstances in which an error amounts to a miscarriage of justice are "unusual," Khattak, 273 F.3d at 562, and the miscarriage of justice exception must be "'applied sparingly and without undue generosity.'"  United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)).  The Third Circuit has instructed that we consider the following factors in determining "whether a miscarriage of justice would occur if the waiver were enforced[:] . . . 'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . . .'"  Mabry, 536 F.3d at 242-43 (quoting Teeter, 257 F.3d at 25-26).

Curti's Section 2255 Motion asserts only claims that his prior attorney was ineffective at his sentencing.  Under the two-part test for attorney ineffectiveness announced by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in order to succeed on a claim of ineffective assistance of counsel, the defendant "must demonstrate that his attorney's performance was deficient and that he was prejudiced by the deficiency.  That is, he must prove that counsel's performance 'fell below an objective standard of reasonableness,' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Shedrick, 493 F.3d at 299 (quoting Strickland, 466 U.S. at 688, 694).

Curti's first argument is that his prior counsel was ineffective for failing to object to inaccuracies and misstatements in the PSI.  While the instant Motion does not identify these inaccuracies and misstatements, Curti referred to two inaccuracies in an October 21, 2010 version of his Section 2255 Motion, which he had filed without using the required form.  The October 21, 2010 Motion posited that paragraph 88 of Curti's PSI incorrectly stated that Curti had over 6000 images on

12

his computer.  (10/21/10 Mot. ¶ 8(a)(1).  Curti contended, in that Motion, that his computer contained only 2000 discrete images of child pornography and that the remaining images were copies backed-up onto external hard drives.  (Id.)  However, the base offense level for violation of 18 U.S.C. § 2252(a)(4)(B) is increased by five levels if the offense involves more than 600 images.  See U.S.S.G. § 2G2.2(b)(7)(D).  Since the increase to Curti's Total Offense Level would be the same whether Curti's computer contained 2000 images or 6000, Curti could not have been prejudiced by his prior attorney's failure to challenge the probation officer's calculation of the number of images of child pornography he possessed.

Curti's October 21, 2010 Motion also asserted that paragraph 12 of the PSI incorrectly states that Curti posed his granddaughter for pictures.  Curti claims that the posing never took place.  However, Dr. Samuel testified at sentencing that Curti did pose his granddaughter for pictures.  (11/7/07 Hr'g Tr. at 23-24.)  Curti's prior attorney was not ineffective for failing to raise this issue, since an attorney cannot be ineffective for "failing to raise a meritless claim."  Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010) (citing  Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir.1998)); see also United States v. Barnes 324 F.3d 135, 139 (3d Cir. 2003) ("Clearly, an attorney's performance cannot have prejudiced a defendant if his alleged ineffectiveness was the failure to advance an unmeritorious claim that could not have been successful had it been advanced." (citing Government of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)).  Consequently, we cannot conclude that prior counsel's failure to object to this alleged inaccuracy fell below an objective standard of reasonableness.

Curti next argues, in the instant Motion, that his prior counsel failed to present evidence of mitigation and remorse at sentencing.  We are puzzled by this assertion.  Curti's counsel presented extensive evidence of Curti's remorse and post-offense rehabilitation at sentencing through the

13

following evidence: the testimony of Curti's treating psychologist, Dr. Steven E. Samuel; Curti's own statement to the Court; the letters written by Curti and his friends and family members; and the argument regarding Curti's provision of his encryption code to the Government. (11/7/07 Hr'g Tr. at 3, 6-12, 29-37.)   Under these circumstances, we cannot conclude that Curti's prior counsel's presentation of evidence regarding mitigation and remorse fell below an objective standard of reasonableness.

Curti also argues that his prior counsel was ineffective for failing to present the testimony of character witnesses who were present at sentencing.  While prior counsel chose not to draw out the sentencing hearing by presenting the testimony of those witnesses, we were aware that those individuals were in the courtroom to support Curti, and we also considered the many letters of support supplied by Curti's family and friends in formulating Curti's sentence.  (Id. at 28-29.)  Under these circumstances, we cannot conclude that Curti's prior counsel's failure to add to the character evidence he submitted by presenting additional testimony fell below an objective standard of reasonableness or had any aggravating effect on Curti's sentence.

Curti further argues that his prior counsel was ineffective for failing to argue that the advisory Sentencing Guidelines range was unreasonable and exceeded a sentence that was sufficient, but not greater than necessary, to comply with the purposes of sentencing.  Again, we are puzzled by this assertion.  Curti's sentencing counsel extensively argued that the advisory Sentencing Guidelines range was higher than necessary and that the Court should grant a variance below that range.  Under these circumstances, we cannot conclude that prior counsel's conduct at sentencing fell below an objective standard of reasonableness.  Moreover, Curti **stipulated**, in his **Guilty Plea Agreement,** that his Guidelines Sentencing Range should be calculated based upon each and every one of the specific

offense characteristics that the probation officer used in calculating his Total Offense Level.  (Guilty Plea Agreement ¶¶ 6(a), (b), (c), (d), (f), (g); PSI ¶¶ 25-28.)  Consequently, Curti's prior counsel was not ineffective for failing to make additional arguments with respect to the calculation of the advisory Sentencing Guidelines range in this case.  See Real, 600 F.3d at 310.

We have examined all of Curti's claims of ineffective assistance of counsel. None of these claims is sufficient to establish that prior counsel's representation of Curti at sentencing fell below an objective standard of reasonableness and prejudiced Curti's.   Accordingly, we conclude that enforcement of the waiver in this case would not result in a miscarriage of justice.

**III.   CONCLUSION**

For the foregoing reasons, we conclude that there is no bar to the enforcement of Curti's collateral attack waiver in this case.  Because Curti has waived his right to bring a Section 2255 Motion to vacate his sentence, we grant the Government's Motion to Dismiss and dismiss Curti's Section 2255 Motion.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.